IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VON ERIC MILLER,
Petitioner,

vs.                                                  CIVIL ACTION 12-00069-CG-N

TONY PATTERSON,
Respondent.

REPORT AND RECOMMENDATION

This action is before the Court on Respondent's answer (doc. 9), wherein Respondent asserts, inter alia, that Petitioner's habeas corpus petition, filed on February 2, 2012, is due to be dismissed. Respondent argues, in sum, that the petition is procedurally barred and that it is without merit. Petitioner has filed a Response (doc. 12), and a Motion to Amend the Response (doc. 15). The matter has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of Petitioner's § 2254 petition (doc. 1), Respondent's opposition thereto (doc. 9), Petitioner's reply (doc. 12), and all other pertinent portions of the record, it is the recommendation of the undersigned Magistrate Judge that the § 2254 petition be **DENIED**.

        I.        FINDINGS OF FACT AND PROCEDURAL HISTORY

Petitioner, Von Eric Miller ("Miller"), was charged with a string of robberies that occurred in May and June of 2002. (Doc. 9-1 at 80). Miller was charged by the State of Alabama for three robberies and by the United States for one robbery. (*See* Doc. 9-1 at 7-8). The federal government indicted Miller on June 27, 2002, and he was convicted

and sentenced to prison in 2004.  (Doc. 1 at 8).  Miller remained incarcerated at FCI Beaumont until 2007.  (*Id*.).

The State of Alabama indicted Miller for first degree robbery on October 29, 2004.[1]  (*Id*. at 9).  The State never served Miller with the indictment nor did it notify him of any charges pending against him until 2007, when he was released from federal custody and arrested by the state of Alabama.[2]  (*Id*.).

Miller was appointed defense counsel per his request.[3]  However, he was uncooperative with his attorneys throughout the entirety of the case; specifically, Miller refused to verbally communicate with his attorneys.  (Doc. 9-1 at 66, 73).  Despite his volitional mutism, he would occasionally write notes to his attorneys and the court when he had a request or a question.  (*Id*. at 18, 29-31, 36-37, 56, 73).  Miller's counsel filed numerous motions throughout the trial regarding the lack of evidence produced by the State pursuant to a standard discovery order: mainly, the gun allegedly used during the commencement of the crime and an original copy of the color photo array was never produced so that the employed private investigator for the defense could conduct a thorough investigation prior to trial.  (*Id*. at 34-35).  The State offered Miller credit for

---

[1] While the State of Alabama charged Miller with three robberies, a Cato's store (CC07-962), a Winn-Dixie grocery store (CC07-963), and a Subway store (CC07-964), (doc. 9-1 at 16, 22), the habeas petition before the Court is identified solely as an action pertaining to case number CC07-964.  (*See* Doc. 1).

[2] The case action summary states that Petitioner was arrested for the state charges on April 1, 2007, but Miller asserts he was released from federal custody and arrested by the State on February 7, 2007.  (Doc. 9-11 at 2).  It is clear from the record, however, that the State arrested Miller immediately upon his release from federal custody, whether that was in February or April of 2007.  The record states Miller "has been in custody continuously since June 17, 2002."  (Doc. 9-1 at 67).  For purposes of this report, the factual discrepancy between the two months in inconsequential.

[3] Mr. Vollmar, was appointed as counsel for Miller on May 7, 2007.  (Doc. 9-11 at 2).  He withdrew from the case, due to the inability to work with Miller and per Miller's request for different counsel, on June 14, 2007, and Mr. Goleman was appointed to represent Miller.  (*Id*. at 3, 25-26).  Mr. Vollmar was then reappointed to the case on July 12, 2007, and dually represented Miller with Mr. Goleman for the duration of the case through the trial.  (*Id*. at 4).

the time he served in federal prison if he would plead guilty to the charge, but Miller declined and requested a trial by jury. (*Id*. at 68).

The case was scheduled for trial on December 3, 2007. On said date, key evidence (color copy of photo lineup) still had not been produced to Miller and the gun had been turned over the morning of trial. Yet through a handwritten note, Miller requested a two-week continuance of the trial against the strong advice of his attorneys. (*See id*. at 73-4). Miller's defense counsel "explained to him the ramifications of possibly waiting for that [continuance] and he suggested that he [did] want to wait that period of time."[4] (*Id*. at 73). The trial was rescheduled, and Miller was later convicted of

---

[4] Miller's counsel expressed their concern to the presiding judge regarding the consequences of the "time-sensitive issues," the pending motions to dismiss, because the State had not timely turned over evidence. (Doc. 9-11 at 15). Defense counsel believed there was "great detriment" to the evidentiary motions if the trial did not go forward on December 3, 2007, and they "made that very clear to Miller as well." (*Id*.). After Miller's continuance was granted, the court heard the motions to dismiss, and the court record states:

    THE COURT:    You may have said it, if we were going to trial today - -
    MR. GOLEMAN:    That's true, Judge. I'm sorry. If I had the benefit of that I think we would be in a different stay. Of course, I do not have that benefit and I think the Court's well aware why.
    THE COURT:    I guess what I'd say about the photo spread too is obviously there's some point that if it doesn't show up you may be entitled to some relief but we're not at that point yet. If we were going to trial now you would be.
    MR. GOLEMAN:    That's correct, Judge. And of course everything is diminished by the fact that we are not going to trial today. We've got plenty of time to look at the gun now. But I think were we sitting here ready to go to trial as we were thirty minutes ago - -
    THE COURT:    Right.
. . .

    MR. VOLLMAR:    Again, I realize the situation we're in today is not exactly the way we wanted it but had it been I think that the law and - - considering the constitutional rights of Mr. Miller, I think that we would have to ask that this case be dismissed, or at the very least, that this evidence be suppressed because it was just turned over to us.
    THE COURT:    Okay. At least as to the gun I'm denying the motion with prejudice. The photo spread, it's denied without meaning you can raise it, if it still doesn't show up, at a later date.

(*Id*. at 87-89).

first degree robbery on August 27, 2008, and sentenced to 99-years imprisonment. (Doc. 1 at 2).

Miller appealed the conviction, but his conviction was affirmed. Miller filed a petition for writ of certiorari on May 19, 2009, raising only one issue,

> [t]hat the Court of Criminal Appeals's [sic] holding that the trial court properly allowed the state to elicit testimony from the detective that the photograph of Miller, used in the photo spread was obtained as a result of Miller's apprehension as a suspect in an unrelated credit union robbery conflicted with the Alabama Supreme Court's holding in Ex parte Long, 600 So.3d 982 (Ala. 1992).

(Doc. 9 at 3). On June 12, 2009, the Alabama Supreme Court issued an order denying the petition for writ of certiorari and issued a certificate of judgment. (Doc. 9-10). Miller did not seek certiorari review in the United States Supreme Court.

On June 15, 2010, Miller filed a Ruled 32 petition claiming he was denied his constitutional right to a speedy trial. (Doc. 9-11 at 24-25). The trial court denied his petition pursuant to Alabama Rules of Criminal Procedure Rule 32.7(d)[5] stating:

  (a)  The defendant was allowed to litigate his denial of speedy trial claim prior to the trial of the matter.
  (b)  The defendant was able to litigate his denial of speedy trial claim on the appeal of his conviction.
  (c)  Defendant raises no new issues on which the Court can render a decision.

(Doc. 1 at 17). The Court of Criminal Appeals also denied Petitioner's Rule 32 petition stating,

---

[5] Rule 32.7(d) states that
[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition.
Ala. R. Crim. P. 32.7(d).

> The circuit court denied Miller's petition pursuant to Rule 32.7(d), Ala. R. Crim. P., finding that Miller "was allowed to litigate his denial of speedy trial claim prior to the trial of the matter." (C. 30.). In his brief, Miller admits that he raised this issue at the trial level. []  Additionally, a review of the record from CC07-963, the grocery store robbery, reveals that Miller filed a motion to dismiss based on the State's violation of his right to a speedy trial. That motion was denied in CC07-963 and was deemed to be moot in the present case. (C. 7.) Rule 32.2(a)(2), Ala. R. Crim. P. states that a petitioner will not be given relief on grounds that were raised at trial. Accordingly, Miller's petition is precluded.
>
> Moreover, Miller's petition is not sufficiently specific. Miller cites Barker v. Wingo, 407 U.S. 514 (1972), in support of his speedy trial claim. In Barker, the United States Supreme Court laid out four factors for a court to consider when deciding whether a defendant's right to a speedy trial has been violated. The first factor is the length of the delay. This factor is the "triggering mechanism" for an analysis of the remaining factors, i.e. the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant. Id. at 530. Miller did not adequately plead any of the additional factors in his petition. He merely asserted that his case should be dismissed "because of the state's failure to present charges to the grand jury in a timely manner, and failure to serve the indictment to the defendant, and not bringing the defendant to trial.
>
> . . .
>
> Since Miller's petition is not sufficiently specific and because it is precluded, the circuit court did not abuse its discretion by denying it pursuant to Rule 32.7(d), Ala. R. Crim. P.

Doc. 1 at 33-34. The Court of Appeals denied Miller's petition for rehearing, *id*. at 40, and the Alabama Supreme Court denied Miller's petition for writ of certiorari on December 9, 2011, doc. 9-17.

Miller filed the present habeas petition on February 1, 2012, alleging, in sum, that his Sixth Amendment constitutional right to a speedy trial had been violated, and, therefore, his 2008 robbery conviction and sentence should be dismissed. (*See* Doc. 1). Respondent avers, in his Answer, that Miller's claim is procedurally defaulted and contends that this Court is barred from reaching the merits of all of his constitutional claims. (*See* Doc. 9). A careful review of the record has been completed, and it is determined that it contains sufficient facts upon which the issues under consideration may

5

be properly resolved.  Therefore, no evidentiary hearing is required, and this case is ripe for a decision by this Court.

## II.     LAW and ANALYSIS.

A.  The Procedural Default Doctrine.

In <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id*. at 729.  This rule applies whether the state law ground is procedural or substantive.  *Id*.  The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement.  *Id*. at 729-730; *see also* <u>Wainwright v. Sykes</u>*,* 433 U.S. 72 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom*. <u>Alderman v. Thomas</u>, 513 U.S. 1061 (1994).  A violation of a state procedural rule is adequate to foreclose federal review if the rule is "'firmly established and regularly followed.'"  <u>Lee v. Kemna</u>, 534 U.S. 362 (2002).  "In

these cases, the state judgment rests on independent and adequate state procedural grounds." Coleman, 501 U.S. at 730 (citations omitted).

The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id*.

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id*. at 730-731.

In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id*. at 735 (quoting Michigan v. Long, 463 U.S. 1032, 1040-1041 (1983))(emphasis added); *see* Harris v. Reed, 489 U.S. 255, 263 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). In all other cases, the presumption is not applicable. *See* Coleman, 501 U.S. at 739. In Teague v. Lane, 489 U.S. 288 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts. *Id*. at 299 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). Moreover, the presumption "looks through"

7

unexplained orders to the last reasoned decision. Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," Coleman, 501 U.S., at 740, 111 S. Ct., at 2559, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803.  Also, the presumption "may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue." Tower v. Phillips, 7 F.3d 206, 211 (11th Cir. 1993) ("Coleman and Ylst lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." Alderman v. Zant, *supra*, 22 F.3d at 1549.

When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, *supra*, 501 U.S. at 750.  The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id*. at 750-751.

8

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded [] efforts" to raise the claim in state court. Objective factors that constitute cause include "'interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." . . . Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains."
>
> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

McCleskey v. Zant, 499 U.S. 467, 493-494 (1991) (internal citations omitted).

B.  Application of the Procedural Default Doctrine.

"The state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence."  Ala. R. Crim. P. Rule 32.3.  The Respondent plead that Miller's petition was procedurally defaulted and, therefore, should be denied review.  (Doc. 9 at 6).

The Circuit Court did not clearly hold that Miller's Rule 32 petition claiming a violation of his right to a speedy trial was procedurally defaulted under Rule 32.7(d). (*See* Doc. 1 at 17).  Indeed, the Circuit Court denied review for precisely the opposite reason: that plaintiff did raise the speedy trial issue on direct appeal.  (*See* Doc. 9-1 at 6-7; Doc. 9-4 at 6).[6]  The Court of Criminal Appeals affirmed the circuit court's ruling, as did the Supreme Court of Alabama when it denied Miller's petition for writ of certiorari.

---

[6] Despite petitioner's failure to raise the issue before the Alabama Court of Criminal Appeals, the circuit court does not appear to have applied procedural bar.

9

(*See* Doc. 1 at 31-35, 40).  The court thus considers the merits of petitioner's habeas claim.

### C.  Merits Discussion of Petitioner's Right to a Speedy Trial Claim.

Petitioner's case is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  As amended, § 2254 now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).  Moreover, the Act, as amended, presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court held that § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied— the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United

10

States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. at 412-413; *see* Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), *cert. denied*, 534 U.S. 956 (2001) ("In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'").

While the record lacks a transcript of the Circuit Court's hearings on Miller's motions denying a speedy trial, it is clear that Miller had the opportunity to argue his position before the court prior to his trial.[7] (Doc. 9-1 at 6-7; 9-11 at 29). Miller cannot

---

[7] Review of this action is governed under 28 U.S.C. § 2254(d)(1) & (2) because Miller did have this speedy trial claim adjudicated before the Circuit Court of Mobile County, Alabama prior to case number CC07-963, and it came before the Circuit Court again in case number CC07-964 and was declared moot. (Doc. 9-1 at 6-7). Furthermore, the Court of Criminal Appeals delineated the Supreme Court standard for deciding a speedy trial claim in its memorandum and then stated "Miller's petition [was] not sufficiently specific" based on the lack of proof plead in Miller's petition. (*See id*. at 33). By the court's analysis of whether or not Petitioner's claim was sufficiently specific, it may have essentially made a ruling on the merits. *See* Bordon v. Allen, 646 F.3d 785 (11th Cir. 2011). The Bordon court stated that "[r]eliance on a rule of 'procedure' does not foreclose the possibility that a court is ruling 'on the merits.'" *Id*. at 812. Bordon further states,
> the Alabama Rules of Criminal Procedure authorize summary dismissal of claims under Rule 32.7(d) for failure to fact plead with sufficient specificity as required by Rule 32.6(b) and the form petition, much as the § 2254 Rules and the § 2255 Rules permit summary dismissal of claims under Rule 4 for failure to fact plead under Rule 2 and the federal form petition. Because such dismissals under the federal rules constitute rulings on the merits, we hold that a summary dismissal

11

establish his entitlement to relief under § 2254(d)(1) or (2) with respect to his speedy trial claim.  The leading case in determining whether or not there has been a violation of one's constitutional right to a speedy trial is Barker v. Wingo, 407 U.S. 514 (1972).  Barker delineates four factors for the court to consider: (1) the length of the delay, (2) the reason for the delay, (3) assertion of the right to a speedy trial, and (4) prejudice due to delay.  407 U.S. 514.   The court will consider these factors in turn.

*Length of the Delay*

The length of the delay from the issuance of the indictment in 2004 to the trial in 2008 in Miller's case is presumptively prejudicial.[8]  *Id*. at 530-31.   However, the term "'presumptive prejudice' does **not** necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry."  Ex parte Walker, 928 So. 2d 259, 264 (Ala. 2005) (quoting Doggett v. United States, 505 U.S. 647, 652 n.1 (1992)).  'Depending on the nature of the charges, the lower courts have generally found post accusation delay 'presumptively prejudicial' at least as it approaches one **year**.'  *Id*. at 265 (citations omitted).  Generally, federal cases "hold that a delay of approximately one **year** or more is presumptively prejudicial."  *Id*., citing Doggett, 505 U.S. at 652 n.1.  A finding of a

---

of a federal claim by Alabama courts for failure to comply with Rule 32.6(b) is similarly a ruling on the merits.
*Id*. at 813; s*ee also*, Boyd v. Comm'r Ala. DOC, 697 F.3d 1320 (11th Cir. 2012) (cited *Bordon* and allowed federal review of claims that had been summarily dismissed by the state courts pursuant to Ala. R. Crim. P. Rules 32.6(b) and 32.7(d)); *Frazier v. Bouchard*, 661 F.3d 519 (11th Cir. 2011) (holding that dismissal for failure to specifically plead a claim required an evaluation of the merits of the federal claim at issue such that the ruling was not "'independent' to foreclose federal habeas review.").  For these reasons, the Court will discuss the merits of Miller's constitutional claim.

[8]  A defendant's right to a speedy trial begins at the commencement of the prosecution.  *See Steely v. City of Gadsden*, 533 So.2d 671 (Ala. Crim. App. 1988).  Alabama Code § 15-3-7 (1975) states "[a] prosecution may be commenced … by finding an indictment, the issuing of a warrant, or by the binding over of the offender."

presumptively prejudicial delay leads a court to go forward and balance the next three Barker factors.

*Reason for the Delay*

The reason for the delay sways in favor of Miller. Respondent's only answer as to why it never served or notified Petitioner of the pending indictment was that Miller was "bouncing around from prison to prison." (Doc. 1 at 8). However, this admission actually confirms that the state knew where it could find Miller. *See* Ex parte Cloptin, 656 So.2d 1243 (Ala. 1995) (requiring the state to make a good faith effort to locate and serve the defendant). Further evidence that the State knew where it could locate Petitioner is that the State arrested Miller immediately upon his release from federal custody. However, contrary to Miller's assertion, there is no evidence in the record that the state "deliberately" delayed the trial in order to hinder his defense or to gain a tactical advantage. *See* Barker, 407 U.S. at 531. Therefore, the state's delay must be viewed as negligent and "is weighted less heavily against the State than is deliberate delay." *Id*. *See* Doggett, 505 U.S. at 655 (The Supreme Court required a showing of trial prejudice where the government's delay between the indictment and arrest was negligent rather than deliberate.)

*Assertion of Speedy Trial Rights*

The scale also tips in Miller's favor with the fact he was unaware of the indictment(s) against him, *see* Doggett, 505 U.S. at 653-54 (1992). However, weighing against him is the fact that once he was aware of the charges, he did not assert his right to a speedy trial until January 28, 2008. (Doc. 9-1 at 7). This speedy trial assertion was made one month ***after*** his trial was originally scheduled for December 3, 2007. *See*

Brown v. State, 392 Sd.2d 1248, 1254 (Ala. Crim. App. 1980) (The court found no violation to defendant's right to a speedy trial where he asserted his right three days before trial.); Clancy v. State, 886 So.2d 166, 172 (Ala. Crim. App. 2003) (Third factor was weighed against defendant who asserted right to speedy trial two weeks before trial.). Also weighing against Miller, it was at his request, against the advice of his attorneys, that the trial was continued from December 3, 2007 to January 28, 2008. (*Id*. at Doc. 9-1 at 73-74, 76-77).

   *Prejudice*

   As to the fourth factor, "[t]he United States Supreme Court has recognized three types of harm that may result from depriving a defendant of the right to a speedy trial: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence.' Robinson v. State, 70 So.3d 686, 698 (Ala. Crim. App. 2011) (quoting Doggett, 505 U.S. at 654) (internal citations omitted) (internal quotation marks omitted). Regarding the harm due to "oppressive pretrial incarceration," Miller was already serving time when the indictment was obtained, so this prejudice does not weigh heavily in Petitioner's favor. However, had Miller been brought to trial by the state while still in federal custody, he could have had his sentences run concurrently. *See* Strunk v. United States, 412 U.S. 434, 437-38) ("[T]he possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed.") (quoting Smith v. Hooey, 393 U.S. 374, 378 (1969)). But, Miller did not completely lose this option

14

despite any delay. The state offered him a deal that would have allowed for this credit in exchange for his guilty plea and a reduced number of years to serve. (Doc. 9-1 at 66-70).

The harm of "anxiety and concern" due to trial delays does not weigh strongly in Petitioner's favor, either. Given that Miller had already been convicted and served time for one robbery, the anxiety and concern is not as large of a factor as it would be for someone who was not serving time and had their family, career, and daily life put on hold, disrupted, or ruined due to criminal charges. Furthermore, Miller was arrested by the state the day he was released from federal custody; therefore, he never had the opportunity to start a new life that was interrupted or destroyed by the state's delay in prosecution.

The most serious of these prejudices 'is the last, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system.' *Id*., quoting Doggett, 505 U.S. at 654 (quoting Barker, 407 U.S. at 532). However, it is here, on the most important factor, that the scales truly tip out of Petitioner's favor, due to his own decisions. The ability to adequately prepare a defense was hindered more by Miller himself than any delay by the state.

Miller declined to aid in his defense by refusing to speak to his attorneys. Miller requested a continuance of his trial minutes before the jury was to be selected. Miller impeded and disadvantaged his own defense by not abiding by the advice of his attorneys regarding the motions to dismiss for lack of evidence produced by the state. It is obvious from the record that those motions would have carried substantially more weight and the outcomes could have been drastically different had Miller gone to trial on December 3, 2007 instead of requesting a continuance. (*See*, *supra,* note 4). Specifically, had the jury

been selected on December 3, 2007, the gun would have been produced the day of trial and the needed color photo lineup would never have been produced.  However, due to Miller's continuance, he was supplied the gun in time to review it and any questions regarding other evidence was later ruled moot by the Circuit Court prior to trial.  (Doc. 9-1 at 6-7). Thus, Miller suffered no harm in his ability to prepare a defense; in fact, the undersigned finds that any prejudice to Petitioner's defense was actually cured with time, instead of hindered by it.

As discussed above, Miller cannot show, under the "contrary to" clause, that the Circuit Court of Mobile County, Alabama arrived at any conclusions opposite to those reached by the Supreme Court of the United States on any question of law or decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts.  Moreover, under the "unreasonable application" clause, Petitioner has not and cannot establish that the Mobile County Circuit Court, unreasonably applied the balancing factors of <u>Barker</u> to the facts in this case.

In the final analysis, it is the determination of the undersigned that Miller's habeas petition fails on the merits and is due to be DENIED.

## **CERTIFICATE OF APPEALABILITY/*IN FORMA PAUPERIS***

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing 2254 Cases (December 1, 2009).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In the instant case, Miller's claim does not warrant the issuance of a Certificate of

Appealability. Under the facts of this case, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Miller should be allowed to proceed further.  Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").  Accordingly, the undersigned recommends that the Court conclude that no reasonable jurist could find it debatable whether the Miller's petition should be dismissed; thus, he is not entitled to a certificate of appealability.

Additionally, the undersigned here addresses the related issue of whether any appeal of an order adopting this Report and Recommendation and denying habeas relief may be brought *in forma pauperis*.  An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* FED. R. APP. P. 24(a)(3)(A); Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that "good faith" is "an objective concept" and that "not taken in good faith" is "a synonym for frivolous"); DeSantis v. United Techs, Corp., 15 F.Supp. 2d 1285, 1288-89 (M.D. Fla. 1998) (stating that good faith "must be judged by an objective, not a subjective, standard" and that an appellant "demonstrates good faith when he seeks appellate review of any issue that is not frivolous").  An appeal filed *in forma pauperis* is frivolous if "it appears that the Plaintiff has little to no chance of success," meaning that the "factual allegations are clearly baseless or that the legal theories are indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  For the foregoing reasons, the undersigned recommends that the court find no possible good faith basis for

appeal of the denial of the petitioner's habeas claims, and thus that no appeal of such a ruling may be brought *in forma pauperis*.

### III.     CONCLUSION

Based on the foregoing, it is the recommendation of the undersigned Magistrate Judge that Petitioner's petition for habeas corpus be DENIED and that judgment be entered in favor of the Respondent, Tony Patterson, and against the Petitioner, Von Eric Miller.  It is further recommended that any motion for a Certificate of Appealability or for permission to appeal *in forma pauperis* be denied.  The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 24th day of April, 2013.

/s/  Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[9] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection**.  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded).**  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[9] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  FED. R. CIV. P 72(b)(2).

19